UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

ROSHAWN MCLAUGHLIN,                                      :
                                                        :
                              Plaintiff,                :
                                                        :           REPORT AND
              -against-                                 :           RECOMMENDATION
                                                        :
ONANAFE MANAGEMENT SOLUTIONS LLC,                       :           22-CV-6792 (PKC)(MMH)
KLEANIX FACILITY SERVICES, LLC d/b/a                    :
Kleanix Facility Services, OJIYOMA IGBAYO, and          :
LAUREN HAWKE-IGBAYO,                                    :
                                                        :
                              Defendants.               :

----------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Roshawn McLaughlin brings this wage and hour action against Defendants Onanafe Management Solutions LLC, Kleanix Facility Services, LLC d/b/a Kleanix Facility Services, Ojiyoma Igbayo and Lauren Hawke-Igbayo, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq.*, and related regulations. (*See generally* Am. Compl., ECF No. 10.)[1] Before the Court is Plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2. (*See generally* Mot., ECF No. 25.)[2] The Honorable Pamela K. Chen referred the motion for report and

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted. Citations to the Local Civil Rules are to the Rules effective October 15, 2021.

[2] Plaintiff includes a notice of motion (Mot., ECF No. 25); the declaration of William Brown, Esq., (Brown Decl., ECF No. 25-1) and its eleven supporting exhibits (Brown Decl. Exs. A–K, ECF Nos. 25-2 through 25-12); Plaintiff's declaration (McLaughlin Decl., ECF No. 25-13) and its sole exhibit (McLaughlin Decl. Ex. 1, ECF No. 25-14); a memorandum of law (Mem., ECF No. 25-15); and an affidavit of service of the motion papers (Aff. of Service, ECF No. 26).

recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment should be **denied** as to Kleanix Facility Services, LLC d/b/a Kleanix Facility Services, Igbayo, and Hawke-Igbayo and **granted** as to Onanafe Management Solutions LLC, with damages awarded as set forth herein.

## I.    BACKGROUND

### A.    Facts

The following facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true, and the uncontroverted documentary evidence submitted in support of the motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

Defendants owned and operated a cleaning business known as Kleanix Facility Services headquartered at 470 7th Avenue, #311, New York, New York 10018. (Am. Compl., ECF No. 10 ¶¶ 10, 22, 27, 36.) Defendants operate Kleanix Facility Services through Onanafe Management Solutions LLC ("Onanafe"). (*Id.* ¶ 14.) Igbayo and Hawke-Igbayo ("Individual Defendants") were owners and principals of Kleanix Facility Services and had the power to hire and fire employees, set wages and schedules, and maintain their records. (*Id.* ¶¶ 27, 30–36, 39–44.) From approximately February 2021 to August 1, 2023, Defendants employed Plaintiff as a cleaner and porter who primarily worked at: (1) 2-11 Crown Street, Brooklyn, New York 11225; and (2) 13-17 New York Avenue, Brooklyn, New York 12203. (*Id.* ¶¶ 69–70; McLaughlin Decl., ECF No. 25-13 ¶ 2.)

Plaintiff alleges that he regularly worked "five (5) days per week, from 10:00 [a.m.] to 6:00 [p.m.], Sunday through Thursday, for approximately forty (40) hours per week." (Am. Compl., ECF No. 10 ¶ 71.) Defendants occasionally requested Plaintiff to work an additional

day (Saturday) and therefore, over forty (40) hours per week. (*Id.*) Defendants failed to keep accurate records of the actual hours Plaintiff worked. (*Id.* ¶ 79.) During Plaintiff's employment, Defendants paid Plaintiff $13.00 per hour for all hours worked, including any hours worked over forty hours. (*Id.* ¶ 73.) Additionally, even though Plaintiff worked without any scheduled meal breaks, Defendants deducted one hour for meal breaks. (*Id.* ¶ 74.) Defendants did not provide Plaintiff with notices of pay rates. (*Id.* ¶ 75.) Defendants also provided Plaintiff with improper wage statements that did not accurately reflect his actual hours worked. (*Id.* ¶ 76; *see also* McLaughlin Decl. Ex. 1, ECF No. 25-14.) Defendants employed Plaintiff as a manual worker and paid Plaintiff biweekly instead of weekly. (*Id.* ¶¶ 77, 88.)

Plaintiff alleges that Defendants failed to pay him minimum wage and overtime pay, and did not pay him for all hours worked. (*Id.* ¶¶ 73–74, 78, 80–81.)

## B.    Procedural History

Plaintiff initiated this action in November 2022. (Compl., ECF No. 1.) Plaintiff filed an Amended Complaint in May 2024. (Am. Compl., ECF No. 10.)[3] Plaintiff purportedly served the summons and Amended Complaint on Defendants in June 2023 and August 2024. (Affs. of Service, ECF Nos. 16–17, 21–22.) At Plaintiff's request, after Defendants failed to appear or otherwise respond to the Amended Complaint, the Clerk of Court entered notations of default in July 2023 and September 2023. (Entries of Default, ECF Nos. 19, 24.)

---

[3] The Amended Complaint is styled as an FLSA collective action under 29 U.S.C. § 216(b) and a class action pursuant to Fed. R. Civ. P. 23, but Plaintiff seeks default judgment only on his own behalf.

Plaintiff filed the instant motion for default judgment on November 21, 2023, seeking damages including unpaid wages, liquidated, damages, late payment of wages, prejudgment interest, and attorneys' fees and costs.  (*See generally* Mem., ECF No. 25-15.)  Judge Chen referred the motion for report and recommendation.  (Nov. 27, 2023 Order.)  To date, Defendants have not appeared in this case or responded to Plaintiff's motion.

## II.   <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc*., No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  *Shah v. New York State Dep't of Civ. Serv*., 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'[a] default . . . only establishes a

defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'" *Double Green Produce, Inc. v. F. Supermarket Inc*., 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

## III.    JURISDICTION AND VENUE

### A.    Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125–27 (2d Cir. 2011)).  The Court has original jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b).  28 U.S.C. § 1331.  The Court may also exercise supplemental jurisdiction over Plaintiff's NYLL claims because they arise out of the same facts and circumstances as the FLSA claims.  28 U.S.C. § 1367(a); *Perez v. 50 Food Corp*., No. 17-CV-7837 (AT)(BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), *adopted by* 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendants must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due

process principles. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

### 1.    Service of Process

*First*, the Court has personal jurisdiction over Onanafe and the Individual Defendants. Plaintiff properly served Onanafe by delivering a copy of the Amended Summons and Amended Complaint to the New York Secretary of State.  (Aff. of Service, ECF No. 21.)  This method of service on a limited liability company complies with federal and state procedural rules.  Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. Ltd. Liab. Co. Law § 303.  Plaintiff also properly served the Individual Defendants by delivering copies of the Amended Summons and Amended Complaint to a person of suitable age and discretion at their respective usual place of abode and business and by mailing copies of process for Igbayo and Hawke-Igbayo to the same locations.  (Affs. of Service, ECF Nos. 16–17.)  These service methods follow federal and state rules for service on individuals.  Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2).

The Court, however, does not have personal jurisdiction over Defendant Kleanix Facility Services, LLC.  An unincorporated association must be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment of by law to receive service of process," or by a manner prescribed by Rule 4(e)(1).  Fed. R. Civ. P. 4(h)(1)(A)–(B).  In turn, Rule 4(e)(1) states that a party may effectuate service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  In New York, personal service on limited liability companies can be accomplished by

by delivering a copy personally to (i) any member of the limited liability company in this state, if the management of the limited liability company is vested in its members, (ii) any manager of the limited liability company in this state, if the management of the limited liability company is vested in one or more managers, (iii) to any other agent authorized by appointment to receive process, or (iv) to any other person designated by the limited liability company to receive process, in the manner provided by law for service of a summons as if such person was a defendant. Service of process upon a limited liability company may also be made pursuant to article three of the limited liability company law [*i.e.*, by service on the Secretary of State].

N.Y. C.P.L.R. § 311-a(a).

Plaintiff failed to properly serve Kleanix Facility Services, LLC under both federal and state rules. Plaintiff's affidavit of service for Kleanix Facility Services, LLC states that service was effectuated upon "Mr[.] Darren Williams" and that "the deponent knew the person so served to the [authorized] agent." (Aff. of Service, ECF No. 22.) However, the affidavit of service is silent regarding whether Darren Williams had authority to accept service on behalf of Kleanix Facility Services, LLC and the "motion papers contain no evidence that [Darren Williams] was an agent authorized by appointment or law to accept service on its behalf." *Pratt v. 32 West 22nd Street, LLC*, No. 159105/2016, 2017 WL 3873269, at *2 (N.Y. Sup. Ct. Sep. 5, 2017) (quoting *Gleizer v. American Airlines, Inc.,* 815 N.Y.S.2d 740, 741 (2d Dep't 2006)). Similarly, the affidavit of service, a preprinted form, "is simply too conclusory to create a presumption of proper service" because there is no information describing how the deponent knew Mr. Williams was authorized to accept service. *McHale v. Chase Home Fin. LLC*, No. 17-CV-6089 (JMA)(AYS), 2020 WL 7711826, at *4 (E.D.N.Y. Dec. 29, 2020). Further, the Court takes judicial notice that, according to the New York State Department of

State's corporations database,[4] Kleanix Facility Services, LLC's registered agent resigned in 2016 and no other agent has been designated. *See* N.Y. Ltd. Liab. Co. Law § 302(d) (describing process for resignation and reassignment of registered agent for service of process on an LLC). Accordingly, the Court concludes that the affidavit of service is not entitled to the presumption that Kleanix Facility Services, LLC was properly served, and the Court does not have personal jurisdiction over this defendant. Based on the foregoing, the Court respectfully recommends that the motion for default judgment should be **denied** as to Kleanix Facility Services, LLC.

### 2. General Jurisdiction

The Court will continue its analysis with respect to Onanafe and the Individual Defendants.

The Court has general jurisdiction over Onanafe because it is a New York limited liability company doing business in New York. *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301). Similarly, though Plaintiff does not allege the Individual Defendants' domiciles, the Court would have general jurisdiction over them if they were domiciled in New York. *See Francis*, 2018 WL 4292171 at *3. If they were not, "a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R.

---

[4] "Search our Corporation and Business Entity Database," N.Y. Dep't of State Div. of Corps., https://apps.dos.ny.gov/publicInquiry/#search (last visited Sept. 13, 2024).

§ 302." *Weitsman v. Levesque*, No. 3:17-CV-727 (MAD)(DEP), 2019 WL 7503022, at *3 (N.D.N.Y. Jan. 11, 2019) (cleaned up).  As alleged, the Individual Defendants conduct business within the state, were "owner[s] and principal[s] of Kleanix Facility Services," and "Onanafe has done business as Kleanix Facility Services," (Am. Compl., ECF No. 10 ¶¶ 15, 27, 36), which sufficiently establishes specific jurisdiction.  *Id.*

### 3.  Due Process

Finally, "[s]ince jurisdiction is proper for [Onanafe and the Individual Defendants] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3.  Onanafe and the Individual Defendants therefore "[have] sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.  Venue

"A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Venue is proper in this district because the failure to pay wages alleged in the Amended Complaint occurred while Plaintiff worked at locations in Brooklyn, New York.  (Am. Compl., ECF No. 10 ¶ 70.)

## IV.  PROCEDURAL COMPLIANCE

### A.  Local Civil Rules

Plaintiff has demonstrated that he took the required procedural steps to provide notice to the defaulting Defendants and to comply with the requirements for default judgment motions. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 n.2 (2d Cir. 2006) ("A district

court has broad discretion to determine whether to overlook a party's failure to comply with local rules.")  Plaintiff includes a notice of motion (Local Civ. R. 7.1(a)(1)), a memorandum of law in support of the motion (Local Civ. R. 7.1(a)(2)), a copy of the Clerk's certificate of default for each defendant (Local Civ. R. 55.2(b)(1)), a copy of the Complaint (Local Civ. R. 55.2(b)(2)), proof of service of the Complaint (Local Civ. R. 55.1(b)(3)), proof of mailing the motion to Defendants (Local Civ. R. 55.2(c)), and a proposed judgment (Local Civ. R. 55.2(b)(3)).  *See Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD)(PK), 2022 WL 1018791, at *4 (E.D.N.Y. Mar. 16, 2022) (listing similar submissions as compliant with the Local Civil Rules), *adopted by* 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Accordingly, the Court finds that Plaintiff has complied with this district's Local Rules.

## B.    Servicemembers Civil Relief Act

Pursuant to the Servicemembers Civil Relief Act ("SCRA"), "[i]n a default judgment action, a plaintiff is required to file an affidavit that states whether the defendant is serving in the military and must show necessary facts in support of the affidavit."  *Lopez v. Metro & Graham LLC*, No. 22-CV-332 (CBA)(RER), 2022 WL 18809176, at *5 (E.D.N.Y. Dec. 16, 2022), *adopted by* 2023 WL 2140418 (E.D.N.Y. Feb. 21, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also Citibank, N.A. v. McGarvey*, 765 N.Y.S.2d 163, 167 (Civ. Ct. 2003) ("The federal and state Soldiers' and Sailors' Civil Relief Acts . . . require that, before a default judgment can be entered against a natural person who has otherwise not answered or appeared in an action or proceeding, the party seeking to enter the default judgment must submit an affidavit to the Court showing that the defaulting party is neither in active military service nor dependent on anyone else who is.") (citing 50 U.S.C. App. §§ 520(1) & 536 [now codified at

50 U.S.C. § 3931]  & N.Y. Mil. Law §§ 303(1), 306 (2003)); *LW Holdco V LLC v. Puls*, 192 N.Y.S.3d 481 (N.Y. Sup. Ct. 2023) (tbl.).  "The non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default [judgment] is to be entered." *Tenemaza v. Eagle Masonry Corp.*, No. 20-CV-452 (AMD)(VMS), 2021 WL 8317120, at *5 (E.D.N.Y. July 22, 2021) (citing *Pruco Life Ins. Co. of New Jersey v. Est. of Locker*, No. 12-CV-882 (ENV)(RML), 2012 WL 3062754, at *1 (E.D.N.Y. July 23, 2012)); *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 375647, at *4 (E.D.N.Y. Jan. 3, 2023), *adopted by* 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023).  Failure to comply with these requirements is sufficient to deny default judgment.  *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB)(JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022), *adopted by* 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).

Here, Plaintiff does not establish his compliance with the SCRA.  While Plaintiff investigated whether the Individual Defendants were serving in the military after the commencement of the action, "Plaintiff[] failed to file an affidavit stating whether the Individual Defendants were in military service at the time Plaintiff[] moved for default judgment."  *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR)(VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *adopted by* 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).  The record before the Court does not reflect any evidence that Plaintiff attempted to conduct such investigation before seeking default judgment against the Individual Defendants.  "Plaintiff's burden in this regard is not a heavy one, as the Department of Defense maintains a Servicemembers Civil Relief Act website for the purposes of, among other things, determining whether an individual is on active duty."  *Pinela Jurado v. Sabor Hispano, Inc.*,

No. 20-CIV-1104 (RPK)(VMS), 2021 WL 11690645, at *7 (E.D.N.Y. Aug. 5, 2021); *see also Morales*, 2023 WL 375647, at *5 n.3 ("It is possible to obtain a report certifying active-duty military status through the Servicemembers Civil Relief Act website.").[5]

Accordingly, the Court respectfully recommends that the motion for default judgment with respect to the Individual Defendants should be **denied**, and will consider the motion only with respect to Onanafe.

## V.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6311 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

Here, all three factors weigh in Plaintiff's favor. *First*, "[Onanafe's] non-appearance and failure to respond to the Complaint or otherwise appear indicate willful conduct." *See Tambriz v. Taste & Sabor, LLC*, 577 F. Supp. 3d 314, 321 (E.D.N.Y. 2021). *Second*, without an answer to the Complaint, "the Court cannot determine whether a defendant has a

---

[5] *See* "Welcome to the Official Servicemembers Civil Relief Act (SCRA) Website," https://scra.dmdc.osd.mil/scra/#/home (website for free requests) (last visited Sept. 13, 2024).

meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y Sept. 17, 2021). *Third*, Plaintiff will be prejudiced if the motion for default judgment is denied because "there are no additional steps available to secure relief in this Court." *Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK)(SJB), 2022 WL 940504, at *2 (E.D.N.Y. Jan. 25, 2022) (citation omitted), *adopted by* 2022 WL 939769 (E.D.N.Y. Mar. 29, 2022).

Based on the foregoing, entry of default judgment is permissible.

## VI.    LIABILITY

### A.    Statute of Limitations

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 320 (2d Cir. 2021) (quoting 29 U.S.C. § 255(a)). "When a defendant defaults, the violation is considered willful and the three-year statute of limitations applies." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (Nov. 30, 2023).   In contrast, the NYLL establishes a six-year limitations period for wage claims.   N.Y. Lab. Law §§ 198(3), 663(3).   The statute of limitations begins to run when an employee begins to work for the employer.   *Esquivel*, 2023 WL 6338666, at *5.  Plaintiff began working for Onanafe in approximately February 2021 and commenced this action on November 2022.   (Am. Compl., ECF No. 10 ¶ 69.)   In light of Onanafe's default, therefore, Plaintiff may recover under the FLSA and the NYLL for the entire period of his employment.

### B.    FLSA Coverage

To establish a minimum wage or overtime claim under FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of [the] FLSA; and (3) the employment relationship is not exempted from [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.*, No. 16-CV-4895 (LDH)(SJB), 2019 WL 8381264, at *6 (E.D.N.Y. Dec. 9, 2019) (cleaned up); 29 U.S.C. §§ 206(a) & 207(a).

### 1.    Employer Subject to the FLSA

The Amended Complaint alleges that Onanafe was Plaintiff's employer within the meaning of the FLSA.  (Am. Compl., ECF No. 10 ¶¶ 13, 17.)  An employer includes, "any person [*e.g.*, an individual or a corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(a), (d).  "For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce or that their work as employees regularly involved them in interstate commerce." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC)(RML), 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Order Adopting R. & R., *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671 (PKC) (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207.  These two methods of establishing FLSA coverage are known as "enterprise coverage" and "individual coverage," respectively.  *Sanchez v. Ms. Wine Shop, Inc.*, 643 F. Supp. 3d 355, 367 (E.D.N.Y. 2022).

The enterprise coverage test considers whether the employer has employees "engaged in commerce or in the production of goods for commerce," *i.e.*, it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for

commerce by any person" and has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii); *Perry,* 2022 WL 1018791, at *6. Plaintiff states that at all relevant times, Onanafe "own[ed] and operate[ed] a cleaning business," and "had an annual dollar volume of sales in excess of $500,000.00." (Am. Compl., ECF No. 10 ¶¶ 10, 16.)

"On default, a plaintiff's allegations are sufficient to subject a defendant to FLSA liability as long as one may reasonably infer that a business was an 'enterprise engaged in commerce.'" *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB), 2023 WL 2542702, at *5 (E.D.N.Y. Feb. 14, 2023) (quoting *Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015)), *adopted by* Order Adopting R. & R., *Alvarado v. J.A Vasquez Landscaping Corp.*, No. 20-CV-4005 (HG)(SJB) (E.D.N.Y. Mar. 16, 2023); *see also Castro v. Hyper Structure Corp.*, No. 21-CV-1391 (ENV)(JRC), 2022 WL 2467242, at *8 (E.D.N.Y. Mar. 7, 2022) (collecting cases). *But see Salamanca v. ABC Corp.*, No. 19-CV-1334 (WFK)(SIL), 2021 WL 3275902, at *5 (E.D.N.Y. July 15, 2021), *adopted by* 2021 WL 3269089 (E.D.N.Y. July 30, 2021) (in default judgment motion, finding no enterprise coverage under the FLSA, but permitting NYLL claims to proceed) ("Vague allegations, which simply parrot the statutory requirements, to support a judgment would in effect render the interstate commerce element meaningless."). While the Amended Complaint does not allege interstate commerce, it does allege that "[Onanafe] provides cleaning, janitorial and maintenance services for companies and businesses, in a variety of industries including buildings, shopping centers, small businesses, schools, among others, throughout New York City." (Am. Compl., ECF No. 10 ¶ 10.) "Courts have found that because cleaning supplies move in interstate commerce, enterprises whose employees use these products in their work are covered by the

FLSA." *Ore v. H & C Cleaning Corp.*, No. 22-CV-20 (AMD)(RER), 2022 WL 19520879, at *8 (E.D.N.Y. Dec. 14, 2022) (collecting cases), *adopted by* 2023 WL 2522814 (E.D.N.Y. Mar. 15, 2023).  As a result, "it [is] logical to infer that the cleaning supplies utilized by [Plaintiff]" for Onanafe's cleaning business "originated outside of New York." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011).

Accordingly, Plaintiff's allegations are sufficient to establish FLSA enterprise coverage.[6]

## 2. Employee Subject to the FLSA

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  "Two types of employees are covered: (1) 'employees who in any workweek [are] engaged in commerce or in the production of goods for commerce;' and (2) employees who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Palaghita v. Alkor Cap. Corp.*, No. 19-CV-1504 (ARR)(RER), 2021 WL 4464121, at *9 (E.D.N.Y. Aug. 20, 2021), *adopted by* 2021 WL 4463483 (E.D.N.Y. Sept. 29, 2021) (quoting 29 U.S.C. § 207(a)(1)).  The FLSA does not extend to employees who are exempt from its minimum wage and overtime requirements. *See* 29 U.S.C. § 213(a)(1) (listing multiple exemptions).

Plaintiff has alleged facts that establish, as a matter of law, that he is engaged in non-exempt employment under the FLSA.  Specifically, Plaintiff alleges that he "was a covered employee within the meaning of the FLSA" and "was hired by [Onanafe] as a cleaner and

---

[6] Because the Court finds that Plaintiff satisfies the enterprise coverage standard, it does not address whether Plaintiff also satisfies the individual coverage test.

porter . . . and was employed to provide cleaning/janitorial services" for Onanafe's customers. (Am. Compl., ECF No. 10 ¶¶ 8, 69.)  Employment in positions with similar duties are not exempt from the FLSA.  *Almighty Cleaning*, 784 F. Supp. 2d at 121; *Ore,* 2022 WL 19520879, at \*9.  The Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions.

Accordingly, Plaintiff qualifies for the protections of the FLSA.

### C.    NYLL Coverage

In order to plead a NYLL claim, Plaintiff "must establish that [the] employment relationship with Defendant[] falls within the NYLL, which applies to 'any person employed for hire by an employer in any employment.'"  *Perry*, 2022 WL 1018791, at \*7 (quoting N.Y. Lab. Law § 190).  "Under the [NYLL], the definition of employee and employer are nearly identical as those under the FLSA, though the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Pelgrift v. 335 W. 41st Tavern Inc*., No. 14-CV-8934 (AJN), 2017 WL 4712482, at \*7 (S.D.N.Y. Sept. 28, 2017) (citing N.Y. Lab. Law §§ 651(5)–(6) and *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at \*6 (E.D.N.Y. Sept. 23, 2014)).  Additionally, "[u]nder the NYLL, an employee-employer relationship is established through the degree of control exercised by the purported employer over the employee."  *Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at \*8 (E.D.N.Y. Mar. 24, 2022) (cleaned up).  The Court has already determined that Onanafe is Plaintiff's employer within the meaning of the FLSA.  (*See* § VI.B.1., *supra*.)  "Because the NYLL's definition of 'employer' is coextensive with the FLSA's definition . . . [Onanafe is] Plaintiff's employer[] within the

meaning of the NYLL" as well. *Perry*, 2022 WL 1018791, at *7. Accordingly, Plaintiff qualifies for the protections of the NYLL.

### D.    Statutory Violations

In the Amended Complaint, Plaintiff alleges that Onanafe violated the FLSA and NYLL minimum wage and overtime wage provisions and the NYLL provisions related to wage notices, wage statements, and timely pay. (Am. Compl., ECF No. 10 ¶¶ 91–93, 97, 101, 103, 106–07, 111–13).

### 1.    FLSA and NYLL Violations

### a.    Minimum Wage

Under the FLSA and the NYLL, "[a]n employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week." *Pastrana v. Mr. Taco LLC*, No. 18-CV-9374 (GBD)(SN), 2022 WL 16857111, at *3 (S.D.N.Y. Sept. 23, 2022) (citing 29 U.S.C. § 206(a) and N.Y. Lab. Law § 652(1)), *adopted by* 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022). "An employee bringing an action for unpaid minimum wages under the FLSA and the NYLL has the burden of proving that he performed work for which he was not properly compensated." *Fermin*, 93 F. Supp. 3d at 41 (cleaned up). "A plaintiff may sufficiently establish FLSA or NYLL minimum wage violations through an affidavit or declaration stating the number of hours worked." *Brito*, 2022 WL 875099, at *10. Additionally, "[i]n the context of a default and where Plaintiffs lack access to the employment records necessary to prove they were not properly compensated, Plaintiffs may meet their burden of proof by relying on recollection alone." *Pastrana*, 2022 WL 16857111, at *5 (quoting *de Los Santos v. Marte Constr., Inc.*, No. 18-CV-10748 (PAE)(KHP), 2020 WL

8549054, at *5 (S.D.N.Y. Nov. 25, 2020), *adopted by* 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020)).

As an initial matter, the Court must determine the applicable minimum wage rates under state, local, and federal law because Plaintiff is entitled to recover the highest minimum wage rate available at any given time during his employment. 29 U.S.C. § 218(a); *Brito*, 2022 WL 875099, at *9. Under New York law, the applicable minimum wage rate is determined by the size and location of the employer and the dates of the plaintiff's employment. N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 142-2.1(a). Plaintiff alleges that he worked for Onanafe from approximately February 2021 until August 1, 2023. (Am. Compl., ECF No. 10 ¶ 69; McLaughlin Decl., ECF No. 25-13 ¶ 2.) While Plaintiff does not allege the size of the employer, during this period, the NYLL minimum wage was $15.00 per hour for employers of any size located in New York City. N.Y. Lab. Law § 652(1)(a)(i)–(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(i)–(ii). During this period, state and local minimum wage rates were higher than the federal minimum wage rate, and thus, Plaintiff is entitled to compensation under the local minimum wage rate. *Compare* N.Y. Lab. Law § 652(1)(a)(i)–(ii) (applicable New York City minimum wage rate of $15.00 per hour) *with* 29 U.S.C. § 206(a)(1) (federal minimum wage rate of $7.25 per hour after July 24, 2009).

Next, "for the purposes of determining whether Plaintiff was paid the prevailing minimum wage, the Court must determine his regular hourly rate of pay." *Ms. Wine Shop*, 643 F. Supp. 3d at 371 (cleaned up). Plaintiff alleges that he was paid $13.00 per hour for all hours worked. (Am. Compl., ECF No. 10 ¶ 73.) In other words, for the entirety of Plaintiff's employment, Plaintiff's hourly pay rate was less than the applicable minimum wage rate of

$15.00.  N.Y. Lab. Law § 652(1)(a).  Accordingly, the Court respectfully recommends that Onanafe should be liable for violating the FLSA and NYLL minimum wage provisions.

### b.    Overtime Wages

The FLSA requires that "'for a workweek longer than forty hours,' an employee working 'in excess of' forty hours shall be compensated for those excess hours 'at a rate not less than one and one-half times the regular rate at which [she or] he is employed.'"  *Dejesus v. HF Mgmt. Servs.*, *LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)).  The NYLL includes the same requirement, providing that eight hours constitutes a "legal day's work."  N.Y. Lab. Law § 160.  For non-hospitality workers such as Plaintiff, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate" for "working time over 40 hours each workweek."  12 N.Y.C.R.R. § 142-2.2. "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health Sys. of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc*., 723 F.3d 192, 201 (2d Cir. 2013).

Plaintiff sufficiently establishes that Onanafe failed to pay him the requisite overtime wages.  Plaintiff specifies that during his employment, he "regularly worked at least five (5) days per week, from 10:00 [a.m.] to 6:00 [p.m.], Sunday through Thursday, for a total of approximately forty (40) hours per week.  On occasion . . . Plaintiff would work [] an additional day, on Saturday, and therefore worked over forty (40) hours per week."  (Am. Compl., ECF No. 10 ¶ 71.)  Plaintiff further alleges that "[Onanafe] paid Plaintiff at a wage

rate of $13.00 per hour . . . for all hours worked" and that Plaintiff was "not compensated for [his] full and proper wages, including for [his] overtime hours worked at the overtime premium of time-and-a-half [his] regular rate." (*Id.* ¶ 73.)  The Court therefore respectfully recommends that Onanafe should be liable for failure to pay overtime wages under both the FLSA and NYLL.

### 2.    NYLL Violations

### a.    Wage Notice and Wage Statements

Pursuant to the New York Wage Theft Protection Act ("WTPA"), an employer must provide its employees, at the time of hiring, a written notice containing, *inter alia*, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;" "the regular pay day designated by the employer;" and the employer's address and telephone number.  N.Y. Lab. Law § 195-1(a).  The WTPA also requires employers to "provide employees with 'a statement with every payment of wages,' listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked."  *Perry*, 2022 WL 1018791, at *8 (quoting N.Y. Lab. Law § 195-3).

"The Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation."  *Guthrie v. Rainbow Fencing Inc*., No. 21-CV-5929 (KAM)(RML), 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) (*"Guthrie I"*) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *adopted as modified*, 2023 WL 2206568

(E.D.N.Y. Feb. 24, 2023)) (*"Guthrie II"*), *aff'd*, --- F.4th ---, No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024) (*"Guthrie III"*).  "To establish [Article III] standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (cleaned up).

After *TransUnion*, courts in this Circuit regularly found allegations of technical violations of NYLL's wage notice and statement requirements to be insufficient, on their own, to confer Article III standing.  *See, e.g.*, *Guthrie I*, 2022 WL 18999832, at *6 ("Plaintiff has not alleged that he suffered any harm or injury due to defendants' failure to provide wage notices or wage statements.") (collecting cases).  Conversely, when "[t]he gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain benefits from his wages, resulting in his underpayment," courts ruled that plaintiffs sufficiently demonstrated "a tangible injury resulting from the violation" to establish Article III standing.  *See, e.g.*, *Stih v. Rockaway Farmers Mkt., Inc*., No. 22-CV-3228 (ARR)(RER), 2023 WL 2760492, at *7 (E.D.N.Y. Apr. 3, 2023) (plaintiff alleged that failure to provide him with proper wage notices injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants purported to claim against his salary).

Recently, the Second Circuit held that "a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm" to plausibly allege a WTPA violation. *Guthrie III*, 2024 WL 3997427, at *5. Analyzing *TransUnion*, the Second Circuit noted that the Supreme Court rejected the concept of purely "informational injury" and clarified that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Guthrie III*, 2024 WL 3997427, at *4 (quoting *TransUnion*, 594 U.S. at 442, which in turn quotes *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

> A plaintiff-employee *may* have suffered an injury-in-fact sufficient to establish standing when, for example, inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion. But the plaintiff-employee cannot "assume[ ] [t]his conclusion without analysis" or rely on "speculation and conjecture." . . . Rather, the plaintiff-employee must support a plausible "theory as to *how* he was injured by [the] defendants' failure to provide the required documents."

*Guthrie III*, 2024 WL 3997427, at *5 (quoting *Quieju v. La Jugueria Inc.*, No. 23-CV-264 (BMC), 2023 WL 3073518, at *2 (E.D.N.Y. Apr. 25, 2023)).[7]

Here, "[t]hough the deficiencies in [Onanafe's] provisions of hiring notices may amount to violations of the labor law, neither Plaintiff nor the record demonstrates how those technical violations led to either a tangible injury or something akin to a traditional cause of

---

[7] The Second Circuit also rejected the reasoning that "a plaintiff's lack of notice resulted in an injury greater than their employers' minimum wage, overtime, and spread-of-hours wage violations because only such a greater injury would entail consequences beyond this lawsuit." *Guthrie III*, 2024 WL 3997427, at *6 & n.6 (cleaned up). According to the Second Circuit, that reasoning derives from "tester standing" cases in which a plaintiff-tester who did not receive statutorily required disclosures must show an interest in using the information beyond bringing a lawsuit. *Id.* (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)). "By contrast, a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has such a concrete interest and is not simply policing legal infractions in the abstract." *Id.*

action, as required by the Supreme Court" or the Second Circuit. *Guthrie II*, 2023 WL 2206568, at *6. Plaintiff alleges that he "did not receive any notices of pay rate or pay day from [Onanafe]." (Am. Compl., ECF. No. 10 ¶ 75.) He further alleges that he "did not receive proper wage statements from [Onanafe]" because "they failed to accurately reflect his actual number of hours worked." (*Id.* ¶ 76; *see also* McLaughlin Decl. Ex. 1, ECF No. 25-14.) However, "[w]ithout plausible allegations that he suffered a concrete injury because of [Onanafe's] failure to provide the required notices and statements, [Plaintiff] lacks standing to sue for that statutory violation." *Guthrie III*, 2024 WL 3997427, at *7. Further, Plaintiff presents no other evidence of any injury that resulted from Onanafe's failure to provide wage notices and accurate wage statements. *Cf. Cuchimaque v. A. Ochoa Concrete Corp.*, No. 22-CV-6136 (RPK)(RML), 2023 WL 5152336, at *5 (E.D.N.Y. July 18, 2023), *adopted by* 2023 WL 9104384 (E.D.N.Y. Aug. 23, 2023) (plaintiff's affidavit in support of default judgment motion established Article III standing for NYLL wage notice claims where plaintiff alleged that "the breach of these obligations injured me by denying me the right to know the conditions of my compensation, resulting in the underpayment of wages"). The Court thus respectfully recommends that Plaintiff's claims for Onanafe's alleged violations of the NYLL's wage notice and wage statement provisions should be dismissed without prejudice for lack of standing.

### b.    Untimely Pay

Per the NYLL, "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i); *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908 (CBA)(RER), 2015 WL 790060, at *4 (E.D.N.Y. Feb. 24, 2015). The NYLL defines a manual worker as a "mechanic,

workingman or laborer." N.Y. Lab. Law § 190(4). "The New York Department of Labor has elaborated on this terse definition" to include "employees who spend more than 25 percent of their working time performing 'physical labor,'" which includes "a wide range of physical activities." *Krawitz v. Five Below, Inc.*, No. 22-CV-2253 (LDH)(ARL), 2023 WL 6385711, at *3 n.4 (E.D.N.Y. Sept. 29, 2023) (citing N.Y. Dep't of Labor Op. Ltr. No. RO-09-0066 (May 21, 2009)). "Separately, under NYLL § 198(1-a), an employee who is 'paid less than the wage to which he or she is entitled under the provisions of [article 6]' may initiate a private 'wage claim' in the courts 'to recover the full amount of any underpayment of wages.'" *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345 (DG)(SJB) 2024 WL 3837669, at *8 (E.D.N.Y. June 28, 2024), *adopted by* Order Adopting R. & R., *Aguilar v. Calexico Cinco LLC*, No. 22-CV-6345 (DG)(SJB) (Aug. 13, 2024).

Similar to the WTPA statutory violations, after *TransUnion*, the Court must determine whether Plaintiff's allegations that Onanafe violated the NYLL's timely wage provision confers Article III standing. Further, the Court addresses whether NYLL § 191 confers a private right of action for violations, an issue that arose after Plaintiff filed this motion.

### i.    Standing

Courts in the Second Circuit have consistently held that the late payment of wages is a concrete harm sufficient to meet the Article III "injury-in-fact" requirement. *Garcia v. Skechers USA Retail, LLC*, No. 23-CV-1055 (PKC)(JAM), 2024 WL 1142316, at *3 (E.D.N.Y. Mar. 15, 2024) (collecting cases). "This is because 'the loss of the time value of money owed to plaintiff is not a harm that *might* occur, but one that *has* occurred.'" *Zachary v. BG Retail, LLC,* No. 22-CV-10521 (VB), 2024 WL 554174, at *3 (S.D.N.Y. Feb. 12, 2024) (quoting *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 64 (S.D.N.Y. 2023)); *see also*

*Levy v. Endeavor Air Inc.*, 638 F. Supp. 3d 324, 329 (E.D.N.Y. 2022) ("[T]he harm plausibly pleaded here by plaintiffs as resulting from the violation of § 191 is actualized"), *recons. denied*, *Levy v. Endeavor Air Inc.*, No. 21-CV-4387 (ENV)(JRC), 2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024).  Moreover, "where a plaintiff has alleged some consequence of that violation, such as the lost time value of money, there is agreement among courts in this Circuit that a plaintiff has alleged an injury-in-fact sufficient to establish standing at the motion to dismiss stage," the same standard applicable to motions for default judgment.  *Freeland v. Findlay's Tall Timbers Distribution Ctr.*, LLC, 681 F. Supp. 3d 58, 70–71 (W.D.N.Y. 2023) (collecting cases).

The Amended Complaint's allegations and Plaintiff's uncontroverted sworn statement sufficiently describe "not a harm that *might* materialize, but one that *has* materialized."  *Levy*, 638 F. Supp. 3d at 329.  First, Plaintiff establishes his status as a "manual worker" because he "was hired by [Onanafe] as a cleaner and porter . . . to provide cleaning/janitorial services" (Am. Compl., ECF No. 10 ¶ 69), and he "performed exclusively manual work including, but not limited to, mopping the floors, cleaning bathrooms, taking out garbage, operating the garbage compactor, and performing general maintenance work," (McLaughlin Decl., ECF No. 25-13 ¶ 3).  *Krawitz*, 2023 WL 6385711, at *3 n.4.  Second, Plaintiff asserts that "[Onanafe] compensated [him] . . . on a biweekly basis even though [he] should have been compensated on a weekly basis."  (Am. Compl., ECF No. 10 ¶ 88.)  Plaintiff further avers that this payment schedule "led to significant financial hardship[.]"  (McLaughlin Decl., ECF No. 25-13 ¶ 9.)

> As a result of being paid bi-weekly, I frequently missed credit card payments and incurred late fees and interest.  I was also frequently late in paying utility, rent, and phone bills.  In order to pay for food, transportation and other

> necessities, I would take out loans from friends and family to meet expenses, which I would sometimes need to pay back with interest. Due to the late payments, my credit score dropped significantly. It also affected my side-business of working as a D.J. Due to the infrequent pay period, I would sometimes run out of cash, and would be unable to pay for travel to get to gigs and therefore lost out on significant income. Overall, I had to turn down at least three events during my employment due to an inability to pay for transportation. The last-minute cancellations damaged my business reputation and caused me to lose out on future opportunities.

*Id.* In other words, Onanafe's failure to pay Plaintiff weekly "stripped [him] of the opportunity to use funds to which [he was] legally entitled." *Levy*, 638 F. Supp. 3d at 329. On that basis, Plaintiff sufficiently establishes Article III standing to contest Onanafe's failure to timely pay wages under NYLL § 191.

### ii.    Private Right of Action

"New York courts are currently split on whether [NYLL] § 198(1-a) expressly provides a private right of action for a manual worker who is paid biweekly in violation of [NYLL] § 191(1)(a) to recover liquidated damages." *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-9718 (VSB)(JLC), 2024 WL 806137, at *9 (S.D.N.Y. Feb. 27, 2024) (discussing *Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117 (2d Dep't 2024) and *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019)), *adopted by* 2024 WL 1908607 (S.D.N.Y. May 1, 2024). In *Vega*, the First Department held that NYLL § 198(1-a) provides an express and implied private right of action for manual workers to enforce the weekly wage requirement. *Vega*, 107 N.Y.S.3d at 288–89.

> The term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action. . . . The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required.

*Id.* at 288.  More recently, however, in *Grant*,  the Second Department declined to follow *Vega* and instead, held that "[NYLL] § 198 does not expressly provide for a private right of action to recover liquidated damages, prejudgment interest, and attorneys' fees where a manual worker is paid all of his or her wages biweekly, rather than weekly, in violation of [NYLL] § 191(1)(a)."  *Grant*, 204 N.Y.S.3d at 125.  According to the Second Department, "[t]he plain language of [NYLL] § 198(1-a) supports the conclusion that this statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment . . . and we do not agree that payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment."  *Id.* at 122 (citation omitted).

Whether NYLL § 191 (or § 198(1-a)) includes an express or implied private right of action is a question of New York state law.  *Bazinett v. Pregis LLC*, No. 1:23-CV-790 (MAD/ML), 2024 WL 1116287, at *5 (N.D.N.Y. Mar. 14, 2024).  "Federal courts applying state law 'are generally obliged to follow the state law decisions of state intermediate appellate courts.'"  *Charles v. United States of Aritzia Inc.*, No. 23-CV-9389 (MMG), 2024 WL 4167502, at *3 (S.D.N.Y. Sept. 12, 2024) (quoting *Broder v. Cablevisions Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005)).  "[W]hen there is 'an apparent split in authority among the Appellate Divisions,' a federal court is not bound by the law of the department that would apply if the case were filed in state court where the federal court sits, but rather must predict 'how the Court of Appeals would rule.'"  *Zachary*, 2024 WL 554174, at *5 (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000)).  "[T]he majority of the New York federal courts [to consider this issue have held] that the Court of Appeals would likely adopt

28

the reasoning expressed in *Vega* and find an express private right of action in NYLL § 191 and § 198." *Aguilar*, 2024 WL 3837669, at *10.[8]

However, "[d]espite the *Vega*/*Grant* split, the Court need not reach the issue of whether an employee who receives full wages on a bi-weekly, rather than weekly, schedule can recover liquidated damages, as [Plaintiff] in this case received only a flat hourly rate regardless of the number of hours worked." *Sarmiento*, 2024 WL 806137, at *9. In other words, because Plaintiff seeks "unpaid overtime wages (and [was] not 'paid in full,' as was the case in *Grant*), and because [Onanafe], failing to appear, [has] not established good cause," *Grant* would not preclude recovery of liquidated damages here. *Id.* Therefore, Plaintiff may pursue his untimely payment claim and the Court respectfully recommends that Onanafe should be liable for violating § 191(1)(a)(i).[9]

## VII. DAMAGES

As Onanafe's liability has been established, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). "A plaintiff has the burden to prove damages to the Court with a 'reasonable certainty.'" *Gaskin v. Brooklyn Suya Corp.*, No. 22 CV 5648 (ENV)(LB), 2023 WL 9232962, at *4

---

[8] *But see Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227 (FPG), 2024 WL 989704, at *10 (W.D.N.Y. Mar. 7, 2024) ("In light of the text, purpose, and history of the statute, the Court concludes that the Second Department's decision in *Grant* better reflects how the New York Court of Appeals would decide this issue.").

[9] If the Court did reach the issue, it would recommend that there is a private right of action to enforce NYLL §§ 191 and 198(1-a). *Charles*, 2024 WL 4167502, at *6 ("The clear weight of authority among district courts in the Second Circuit is aligned with the conclusion in *Vega* that there is an implied private right of action to enforce Section 191.").

(E.D.N.Y. Oct. 26, 2023) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantra*, 183 F.3d 151, 155 (2d Cir. 1999)).

"That being said, because under [the] FLSA 'the burden is on an employer properly to record hours,' a 'plaintiff need not compute FLSA damages with precision.'" *Lopez v. Royal Thai Plus*, *LLC*, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *9 (E.D.N.Y. Feb. 6, 2018) (quoting *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 20–21 (2d Cir. 2002)), *adopted by* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). "Under the FLSA framework, if an employer fails to keep records of work performed, a court may then award damages to the employee, even though the result may be only approximate." *Brito*, 2022 WL 875099, at *15. Where a plaintiff has sufficiently established claims under the FLSA and NYLL, that plaintiff is "not entitled to recover under both FLSA and NYLL for [backpay] earned over the same period." *Lopez*, 2018 WL 1770660, at *10. Rather, "[a] plaintiff may recover under the statute which provides the greatest amount of damages." *Brito*, 2022 WL 875099, at *9. Because the NYLL provides greater or equal recovery than the FLSA at all relevant times during Plaintiff's employment with Onanafe, the Court will apply the NYLL for all damages calculations.

As described below, Plaintiff is seeking unpaid minimum wage and unpaid overtime pay; liquidated damages for unpaid wages and untimely pay; pre-judgment interest; attorneys' fees; and costs. (Mem., ECF No. 25-15 at 6–13.)[10]

---

[10] The Court will not address Plaintiff's request for damages for failure to provide wage notices and wage statements, in violation of the WTPA.

### A.    Minimum Wage and Overtime Pay

Plaintiff requests $46,231.25 for unpaid minimum wages and overtime compensation. (Brown Decl., ECF No. 25-1 ¶ 20; Brown Decl. Ex. H, ECF No. 25-9 (damages chart); Mem., ECF No. 25-15 at 11.)

The Court already determined that Plaintiff was entitled to the minimum wage rates set forth in the NYLL and its regulations because they were higher than the federal minimum wage rate during the relevant period.  (*See* § VI.D.1.a., *supra*.)  Specifically, during this period, the NYLL minimum wage was $15.00 per hour for employers of any size located in New York City.  N.Y. Lab. Law § 652(1)(a)(i)–(ii); 12 N.Y.C.R.R. § 142-2.1(a)(1)(i)–(ii).

Moreover, "[w]here a plaintiff is 'compensated below the statutory minimum wage under either [the FLSA or NYLL], the overtime fifty-percent premium is calculated based upon the applicable minimum wage not the plaintiff's actual pay rate.'"  *Brito*, 2022 WL 875099, at *16 (quoting *Guardado v. 13 Wall St., Inc.*, No. 15-CV-02482 (DRH)(SIL), 2016 WL 7480358, at *10 (E.D.N.Y. Dec. 2, 2016), *adopted by* 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016)).  From February 2021 to August 1, 2023, Plaintiff alternated between working 47.5 hours and 57 hours per week and was paid $13.00 per hour.  (Brown Decl., ECF No. 25-1 ¶¶ 6–7; McLaughlin Decl., ECF No. 25-13 ¶¶ 2–3, 5–8; Mem., ECF No. 25-15 at 8.)  Plaintiff is entitled to unpaid overtime at the rate of one and one-half times his regular rate of pay for hours worked in excess of 40 hours per workweek, or $22.50 per hour for those hours ($15 New York City minimum wage multiplied by 1.5).  *Dejesus*, 726 F.3d at 88; 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  Plaintiff is thus entitled to the unpaid minimum wages and overtime wages shown in the following table:

| Number of Hours Worked | Wks[11] | Min. Wage | Min. Overtime (OT) | Lawful Weekly Pay[12] | Credited Weekly Pay[13] | Underpymt Per Week[14] | Total Unpaid Wages & OT[15] |
|---|---|---|---|---|---|---|---|
| 47.5 hours | 65 | $15.00 | $22.50 | $768.75 | $520 | $248.75 | $16,168.75 |
| 57 hours | 65 | $15.00 | $22.50 | $982.50 | $520 | $462.50 | $30,062.50 |
| Total: | | | | | | | $46,231.25 |

Accordingly, the Court respectfully recommends that Plaintiff should be awarded $**46,231.25** in unpaid minimum wage and overtime pay.

### B.    Liquidated Damages

Plaintiff seeks $46,231.25 in liquidated damages for unpaid minimum wages and unpaid overtime compensation. (Brown Decl., ECF No. 25-1 ¶ 21; Brown Decl. Ex. H, ECF No. 25-9 (damages chart); Mem., ECF No. 25-15 at 8–10.)

"Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime compensation, unless the employer proves a good

---

[11] "Wks" refers to the number of weeks Plaintiff worked the corresponding number of hours in each row.

[12] "Lawful Weekly Pay" refers to the weekly wages Plaintiff should have received. For the weeks Plaintiff worked 47.5 hours per week, the Court calculated the credited weekly pay as follows: ((40 hours x the applicable minimum wage + 7.5 overtime hours x the applicable overtime hourly rate)) x (number of weeks). When Plaintiff worked 57 hours per week, the Court calculated the credited weekly pay as follows: ((40 hours x the applicable minimum wage + 17 overtime hours x the applicable overtime hourly rate)) x (number of weeks).

[13] "Credited Weekly Pay" refers to the average wages Plaintiff was actually paid. The Court calculates the credited weekly pay by multiplying 40 hours by $13.00.

[14] "Underpymt Per Week" refers to the difference between the lawful weekly pay Plaintiff should have received minus the average weekly pay he actually received (*i.e.,* Lawful Weekly Pay – Credited Weekly Pay).

[15] "Total Unpaid Wages & OT" refers to the unpaid minimum and overtime wages due to Plaintiff. The Court calculated by multiplying the number of weeks per time period by the amount of unpaid wages due to Plaintiff (*i.e.*, Wks x Underpymt Per Week).

faith basis for believing that its underpayment of wages was in compliance with the law." *Perry*, 2022 WL 1018791, at *11 (citing 29 U.S.C. §§ 216(b), 260; N.Y. Lab. Law § 198(1-a)). "Plaintiff[] may not, however, recover 'duplicative liquidated damages for the same course of conduct' under both the FLSA and NYLL." *Pastrana*, 2022 WL 16857111, at *10 (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)). "In cases where plaintiffs could obtain liquidated damages under either FLSA [or] NYLL, the trend has been to award liquidated damages under whichever statute provides the greater potential recovery." *Payamps*, 2019 WL 8381264, at *13. Here, where Onanafe defaulted and therefore makes no showing that it acted in good faith when it underpaid Plaintiff, the greater liquidated damages available under the NYLL are appropriate. Accordingly, the Court respectfully recommends that Plaintiff should be awarded an additional $**46,231.25** in liquidated damages for unpaid wages under the NYLL only.

C.    **Untimely Pay**

Plaintiff seeks $33,800 in liquidated damages as a result of Onanafe's late payment of wages. (Brown Decl., ECF No. 25-1 ¶ 22; Brown Decl. Ex. H, ECF No. 25-9 (damages chart); Mem., ECF No. 25-15 at 11.)

"[L]iquidated damages may be available under Labor Law § 198(1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages." *Vega*, 107 N.Y.S.3d at 288. To avoid duplicating the liquidated damages for unpaid minimum wages and overtime, "[l]iquidated damages for a violation of section 191 should be based only on the failure to pay timely agreed-upon wages during the first week of each bi-weekly pay period." *Anzures v. Maredin Rest. Corp.*, No. 22-CV-2798 (EK)(JRC), 2024 WL 1376812, at *15 (E.D.N.Y. Jan. 24, 2024) (collecting cases), *adopted by*

2024 WL 1367963 (E.D.N.Y. Apr. 1, 2024).  Specifically, the Court calculates liquidated damages by multiplying the agreed upon wages by the number of weeks the payment was late, *i.e.*, half the weeks of Plaintiff's employment period.  *Id.* at *15 & n.12.  Plaintiff was paid $520 per week ($13.00 x 40 hours) and he worked a total of 130 weeks.  (Am. Compl., 10 ¶ 73; McLaughlin Decl., ECF No. 25-13 ¶ 4; Brown Decl., ECF No. 25-1 ¶ 7; Brown Decl. Ex. H, ECF No. 25-9 (damages chart).)  As a result, the number of weeks the payment was late is 65 weeks (130 weeks / 2).  Applying the formula described above, the Court calculates liquidated damages as $33,800 (*i.e.*, $520 x 65 weeks).  Accordingly, the Court respectfully recommends an award of $**33,800** in liquidated damages for Plaintiff's NYLL untimely pay claim.

### D.    Prejudgment Interest

Plaintiff seeks, as of November 21, 2023, prejudgment interest in the amount $16,369.37.  (*See* Brown Decl., ECF No. 25-1 ¶ 23; Brown Decl. Ex. H, ECF No. 25-9 at 3 (damages chart); Mem., ECF No. 25-15 at 11.)

"It is well settled that in an action for violations of the FLSA prejudgment interest may not be awarded in addition to liquidated damages."  *Fermin*, 93 F. Supp. 3d at 48 (cleaned up); *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).  In contrast, the NYLL enables a plaintiff to recover both liquidated damages and prejudgment interest.  *See Fermin*, 93 F. Supp. 3d at 48.  Accordingly, Plaintiff is eligible to recover prejudgment interest on compensatory damages for unpaid wages available under the NYLL at 9% per annum.  *See id.* at 49–50; N.Y. C.P.L.R. § 5004; *Burns v. Scott*, 635 F. Supp. 3d 258, 282 (S.D.N.Y. 2022), *recons. denied*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022) ("Prejudgment interest applies only to the amount of compensatory damages, and excludes the

amount of liquidated damages.") (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)); *see also Avedana*, 2021 WL 4255361, at *12 (applying prejudgment interest rate to NYLL claims).

When damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts applying N.Y. C.P.L.R. § 5001 have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" *Fermin*, 93 F. Supp. 3d at 49. Courts generally calculate prejudgment interest in NYLL "from the midpoint date of the claims through the date judgment is entered" as well as from "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Perry*, 2022 WL 1018791, at *13; *Pastrana*, 2022 WL 16857111, at *10; *Ms. Wine Shop*, 643 F. Supp. 3d at 380.

As discussed, the Court recommends that liquidated damages should be awarded for unpaid wages under the NYLL in the amount of $46,231.25, and thus, pre-judgment interest may be awarded. (*See* § VII.B., *supra*.) For purposes of calculating prejudgment interest, the Court selects May 2, 2022 (the midpoint between Plaintiff's start date of employment (February 1, 2021) and Plaintiff's end date of employment (August 1, 2023)) as a reasonable intermediate date. Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff should be awarded **$9,872.40** in prejudgment interest from May 2, 2022 to

September 14, 2024, the date of this Report and Recommendation.  This amount will increase by $11.40 per day until the entry of judgment.[16]

### E.    Attorneys' Fees

Plaintiff seeks $11,750 in attorneys' fees for the legal services of Brown Kwon & Lam, LLP.  (Brown Decl., ECF No. 25-1 ¶ 26; Brown Decl. Ex. I, ECF No. 25-10 (attorney billing record); Mem., ECF No. 25-15 at 13.)

"Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions."  *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS)(AKT), 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020), *adopted by* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).  "District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request."  *Perry*, 2022 WL 1018791, at *14.

"The starting point for determining the presumptively reasonable fee award is the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Esquivel*, 2023 WL 6338666, at *17. "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.*  "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases."  *Morales v. Los Cafetales Rest. Corp.*, No. 21-

---

[16] The Court calculates the daily prejudgment interest rate by multiplying the total amount of unpaid wages ($46,231.25) by 9%, then dividing by 365, for a daily rate of $11.40. The daily rate is then multiplied by the number of days between May 2, 2022 and September 14, 2024 (866 days).

CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." *Perry*, 2022 WL 1018791, at *14 (cleaned up). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (cleaned up). "The applicant bears the burden to demonstrate reasonableness." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD)(MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023), *adopted by* 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Plaintiff requests attorneys' fees based on a total of 31.4 hours of work at the hourly rate of $375 for William Brown, a partner at the firm with more than ten years of experience litigating wage and hour actions.  (Mem., ECF No. 25-15 at 13; Brown Decl., ECF No. 25-1 ¶ 29.)  The Court finds that the requested fee of $375 is consistent with the range of rates awarded to partners in this district and reflects what a client would reasonably pay for Mr. Brown's services. *Morales*, 2023 WL 7684775, at *7.

The Court further finds that the number of hours expended in this case is not excessive or unnecessary based on the contemporaneous time records attached to the motion.  (*See generally* Brown Decl. Ex. I, ECF No. 25-10.)  Instead, the requested hours are reasonable for the circumstances of this case, where Plaintiff amended the complaint to add new defendants and moved for a default judgment.

Accordingly, the Court respectfully recommends an award of $**11,750** in attorneys' fees.[17]

## F.    Costs

Finally, Plaintiff seeks $568.60 in costs, including court filing and service fees.  (Brown Decl., ECF No. 25-1 ¶ 32; Brown Decl. Ex. I, ECF No. 25-10 at 3.)

Pursuant to both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of reasonable attorneys' fees and costs.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Avedana*, 2021 WL 4255361, at *13.  Plaintiffs must provide sufficient documentary evidence to support an award of reasonable costs.  *Marine*, 2022 WL 17820084, at *11.  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiff is entitled to the filing fee for this case, as the docket reflects that Plaintiff paid the $402 filing fee.  (ECF No. 1 Dkt. Entry.)  Plaintiff also supports the request for process server fees with receipts reflecting $166.60 in costs incurred.  (*See* Brown Decl. Ex. J, ECF No. 25-11.)

Therefore, the Court respectfully recommends that Plaintiff should be awarded a total of $**568.60** in costs.

## G.    Post-Judgment Interest

Finally, Plaintiff did not specifically request post-judgment interest in the Amended Complaint or in the default motion submission.  However, a plaintiff is "entitled to post-judgment interest on all civil money awards as a matter of right in federal court."  *Brito*, 2022

---

[17] The Court notes that 31.4 hours of work at the requested hourly rate of $375 results in a total of $11,**775** but awards $11,**750** in attorneys' fees as requested.  (Brown Decl. Ex. I, ECF No. 25-10.)

WL 875099, at *27.  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VIII.  CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiff's motion for default judgment at ECF No. 25 should be **denied** as to Defendants Kleanix Facility Services d/b/a Kleanix Facility Services, Ojiyoma Igbayo, and Lauren Hawke-Igbayo and **granted in part** as to Defendant Onanafe Management Solutions LLC.  Specifically: (1) the Clerk of Court should enter the proposed default judgment (as amended)[18] against Defendant Onanafe Management Solutions LLC, and (2) Plaintiff should be awarded damages in the amount of **$148,453.50** which includes: (a) $46,231.25 in unpaid minimum wage pay and unpaid overtime wages; (b) $46,231.25 in liquidated damages for unpaid wages; (c) $33,800 in liquidated damages for untimely pay; (d) $9,872.40 in prejudgment interest to increase by $11.40 per day until the entry of judgment; (e) attorneys' fees of $11,750; (f) costs of $568.60; and (g) post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  All other requests for relief in Plaintiff's motion regarding Defendant Onanafe Management Solutions LLC should be **denied**.

---

[18] The amendments to the proposed judgment at ECF No. 25-12 are: (1) in the caption, deleting the names "Kleanix Facility Services d/b/a Kleanix Facility Services," "Ojiyoma Igbayo," and "Lauren Hawke-Igbayo"; and (2) in the last paragraph, revising the amounts of damages to be consistent with this Report and Recommendation.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to: (1) Onanafe Management Solutions LLC, 470 7th Avenue, Suite 311, New York, NY 10018; (2) Kleanix Facility Services d/b/a Kleanix Facility Services, 470 7th Avenue, Suite 311, New York, NY 10018; (3) Ojiyoma Igbayo, 106 Hull Street, 1 Fl., Brooklyn, NY 11233; and (4) Lauren Hawke-Igbayo, 905 Woodmere Drive, Valley Stream, NY 11581.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Chen. If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 14, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge